IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NANCY HOVE,

     Plaintiff,

  v.

PIERCE COUNTY,
PIERCE COUNTY BOARD OF SUPERVISORS,
JEFF HOLST, and JOHN AUBART,

    Defendants.

OPINION AND ORDER

22-cv-487-slc

---

   In this civil action for damages, former Pierce County Sheriff Nancy Hove contends that the Pierce County Board of Supervisors and two of its members discriminated against her on the basis of her age and disability when the Board voted to move certain positions and duties from Hove's department to a different department, declined to approve her proposed budget and job descriptions, and had improper communications with her staff. Hove asserts federal causes of action for employment discrimination and retaliation under Title 1 of the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq*., and 42 U.S.C. § 1983, as well as a supplemental state law claim under the Wisconsin Fair Employment Act, Wis. Stat. § 111.321.

   Defendants move to dismiss Hove's amended complaint in its entirety under Fed. R. Civ. P. 12(b)(6). Dkt. 18. For the reasons set out below, I am denying the motion with respect to Hove's claims against Pierce County for discrimination under the Americans with Disabilities Act and the Equal Protection Clause based on the County's removal of emergency dispatch and supervision responsibilities from her department. I am granting the motion as to all other claims and defendants.

BACKGROUND

I draw the following facts from Hove's amended complaint and documents she attached to it, dkt. 16, as well as publically-available minutes of the Pierce County Board of Supervisors. *Phillips v. Prudential Ins. Co. of America*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) ("In conducting our review [under 12(b)(6)], we must consider not only the complaint itself, but also. . . documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.").  For the purposes of deciding the motion to dismiss, I must accept Hove's plausible factual allegations as true and draw all reasonable inferences in her favor. *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016).

At all relevant times, plaintiff Nancy Hove was the elected sheriff of Pierce County, Wisconsin, an office she had held since 2007.  Defendant Jeff Holst was Chairman of the Pierce County Board of Supervisors and defendant Jon Aubart was the Vice Chairman.

In early September 2020, Hove was diagnosed with brain cancer and underwent surgery. Afterward, Hove was out of the office for roughly six months, during which time she continued to "fulfill[] all of her obligations as Sheriff as she had been prior to the surgery." ¶17. Hove returned to work at the office in March 2021.  Hove's brain cancer continues to "substantially limit her ability to perform certain major life activities." ¶19.

Around this time, Hove learned that the County Board was proposing to move the county dispatch services out from under her supervision to the Pierce County Emergency Management Department. Hove had not been consulted about this change and was not in favor of it.  Accordingly, on March 23, 2021, she called a meeting with Holst and Aubart to discuss the proposal.  At the meeting, Holst and Aubart confirmed that the Board was transferring the

2

county's dispatch services from the sheriff's department to the emergency management department. During the meeting, Aubart asked Hove: "Why don't you step down and just let Chief Deputy Steve Albarado handle things?" In the same meeting, Holst said that Hove was "getting old" and "should retire."

"Within hours" of this meeting, Holst and Aubart "acted to remove" from the sheriff's office the Emergency Management Director position and dispatch and supervisory duties. ¶ 25.

Around this same time, Holst and Aubart contacted personnel under Hove's supervision and directed their conduct without Hove's permission. (I surmise these may be dispatch personnel, but this is not clear from the amended complaint.) This interfered with "the Sheriff's Office chain of command, internal operations, and administration." ¶ 27. On April 9, 2021, Hove sent a "cease and desist" letter to Holst, Aubart and to Jason Matthys (who was the Administrative Coordinator for Pierce County), complaining that their contacts with her staff behind her back were "highly inflammatory," were creating a hostile work environment, and were an unlawful interference with her duties and responsibilities as sheriff. Dkt. 16, Exh. 4. In her letter, which she attached to her amended complaint, Hove wrote:

> As you well know, the Office of Sheriff has inherent common law power and sovereignty granted under the State's constitution and state law. It is also clear that the County Sheriff is a part of County government and works with (not for) the County Board of Supervisors. As Sheriff, I am responsible for the direct oversight and management of the staff at the Pierce County Sheriff's Office. Not you!
>
> * * *
>
> I have been elected by the citizens of Pierce County to be the Sheriff. I and I alone, decide how to carry out my duties. The County Board is my financial support so that I can provide the necessary services to the citizens of Pierce County. At the same time, it is very clear that the County Board of Supervisors and the

> County Administrator has no business or authority to manage or
> guide the employees of the Pierce County Sheriff's Office. <u>That is
> my duty and responsibility</u>. As the executive and administrator of
> the Pierce County Sheriff's Office, <u>I will determine how Sheriff's
> Office staff will be supervised and managed</u>.  Not you!

> *Id*. (emphasis in original).

Although Hove stated that the actions of Matthys, Holst and Aubart were "creating a hostile work environment," she did not mention her age or disability in her letter.

At some unspecified time after the March 23 meeting and Hove's April 9, 2021, letter the Board refused to approve Hove's proposed budgets and it denied her proposed job descriptions for lieutenants.  The Board had never denied any of Hove's proposed budgets before this time.

On April 20, 2021, the County Board, with 16  members present, voted unanimously to approve a proposed ordinance amending the Pierce County Code allowing the dispatch division to be supervised by the Emergency Management Director, and for the emergency management department to be supervised by the county's law enforcement committee. Dkt. 11-9, at 2.

## ANALYSIS

Hove's amended complaint asserts claims against all defendants under the following legal theories (which I have re-ordered):

> (1) Discrimination on the basis of disability or a perceived disability in violation of the Americans with Disabilities Act;

> (2) Retaliation in violation of the ADA

> (3) "Hostile work environment" under 42 U.S.C. § 1983;

> (4) Age and disability discrimination under 42 U.S.C. § 1983; and

4

(5) Age and disability discrimination in violation of the Wisconsin
Fair Employment Act, Wis. Stat. § 111.321.

To survive a 12(b)(6) motion, a plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff need not plead the elements of each claim, but she must allege enough facts to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). The plaintiff must include "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank*, N.A., 614 F.3d 400, 404–05 (7th Cir. 2010).

In the employment discrimination context, a plaintiff's complaint need only identify the type of discrimination she believes occurred, who is responsible, and when it happened. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010). But the plaintiff still must advance plausible allegations that she experienced discrimination because of a protected characteristic. *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021) (to plead an employment discrimination case, "it is enough for a plaintiff to assert that [*she*] was treated worse because of protected characteristics"). And as in any case, when the claim is precluded by a dispositive issue of law or when it is clear that "no relief could be granted under any set of facts that could be proved consistent with [her] allegations," then dismissal is proper. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

## I. The County Board is not a proper defendant

I will begin by dismissing defendant Pierce County Board of Supervisors as a defendant. As defendants argue, the Board is not subject to suit because it is not separable from the county

government it serves. *Whiting v. Marathon Cty. Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004); *Haka v. Lincoln County*, 533 F. Supp. 2d 895, 908 (W.D. Wis. 2008). Although Hove disputes this, she does not present any authority supporting her position. What's more, she doesn't explain what purpose is served by naming both the County and the County Board as defendants. The only conceivable reason to keep the Board in the suit is because that is the only entity that Hove identified as her "employer" on her discrimination charge with the EEOC. *See* dkt. 16, exhs. 1 and 2. As discussed below, however, Hove's naming of the Pierce County Board of Supervisors was sufficient to put Pierce County on notice of her discrimination claims. Accordingly, there is no reason for both the Board and the County to remain in this lawsuit. Therefore, the County Board is out.

## II. Count I:  Discrimination under the ADA

Title I of the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a claim under § 12112(a), a plaintiff must allege three things: (1) she has a disability that fits the definition in the ADA; (2) she is otherwise qualified to perform the duties of her job either with or without a reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016); *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015). In addition, Hove must establish that she was "employed by" the employer that she

seeks to hold liable. 42 U.S.C. § 12111(4) ("The term 'employee' means an individual employed by an employer."); *Whitaker v. Milwaukee Cnty.,* 772 F.3d 802, 809 (7th Cir. 2014).

Defendants contend that Hove's ADA claim should be dismissed because Hove has failed to allege facts showing: (1) that she properly exhausted her administrative remedies; (2) that she is an employee; (3) that she suffered an adverse employment action; or (4) she is a qualified individual with a disability.  I address these arguments in turn.

### A. Administrative Exhaustion

Before a plaintiff may file suit under the ADA, she must file an administrative charge with the EEOC. 42 U.S.C. § 12117(a) (adopting Title VII enforcement procedures for ADA claims); *id*. § 2000e-5(f)(1) (requiring administrative exhaustion before suit is filed); *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018) ("An ADA plaintiff must file a charge with the EEOC before bringing a court action against an employer.").  This exhaustion rule "serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employe[r] some warning of the conduct about which the employee is aggrieved." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (internal citations omitted).

Defendants contend that Hove's ADA claim against them should be dismissed because she named only the Pierce County Board of Supervisors as the respondent in her discrimination charge with the EEOC.  As an initial matter, the ADA imposes liability on employing entities, not individuals.  So it doesn't matter whether Hove named Holst and Aubart in her EEOC

charge: she can't assert an ADA claim against them anyway because they were not her "employer." *AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995).

It is true that Hove didn't name Pierce County, but the Seventh Circuit has held that a party not named in the EEOC charge can be sued where the "unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance[.]" *Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130, U. A.*, 657 F.2d 890, 905 (7th Cir. 1981) (citations omitted). Further, EEOC charges "are to be construed with 'utmost liberality' and parties sufficiently named or alluded to in the factual statement are to be joined." *Id.* (citations omitted).  As just discussed and as defendants admit, "the County Board has no existence outside of Pierce County." Reply Br., dkt. 24.  Defendants cannot have it both ways. If the Board is not a suable entity separate from the County, then it is also not a separate entity for notice purposes.  By naming the Board of supervisors, Hove's EEOC charge adequately served to notify Pierce County of the alleged ADA violation.

### B. Whether Hove is an "Employee"

The County contends that Hove cannot proceed against it under the ADA because Hove is an elected public official and therefore not an "employee" under the ADA.  It raises two arguments in support of its position. One is patently incorrect and the other is premature.

The County argues that public officials are expressly excluded under 42 U.S.C. § 2000e(f), which states:

> The term 'employee' means an individual employed by an employer, except that the term 'employee' shall not include any

8

> person elected to public office in any State or political subdivision
> of any State by the qualified voters thereof . . . .

But that language is from Title VII.  The ADA has its own definition of "employee" which does *not* except elected public officials.  The ADA definition reads:

> The term 'employee' means an individual employed by an
> employer. With respect to employment in a foreign country, such
> term includes an individual who is a citizen of the United States.

42 U.S.C. § 12111(4).[1]

The only support the County offers for its contention that Title VII's definition applies instead comes from a single line from an Illinois district court opinion, *Dintelmann v. Vill. of Freeburg,* No. 14-CV-855-SMY-DGW, 2015 WL 5176418, at *2 (S.D. Ill. Sept. 3, 2015), where the court stated: "42 U.S.C. § 2000e(f) defines the term 'employee' for purposes of the Rehabilitation Act and the ADA."  The *Dintelmann* court did not cite any authority for this conclusion and I have found none.  To the contrary, as another court has observed, "Congress adopted or incorporated by reference several definitions contained in Title VII into the ADA, but deliberately chose *not* to include the elected official exception contained in Title VII." *Parker v. Yuba Cnty. Water Dist.*, No. 0206CV0340GEBKJM, 2006 WL 2644899, at *2 (E.D. Cal. Sept. 14, 2006) (emphasis added) (citing H.R.Rep. No. 101-485(II) at 336 (1990) (reprinted in 1990 U.S.C.C.A.N. 303, 336) (observing "[t]he exception set out in Title VII . . . for elected officials . . . has been deleted"), and H.R.Rep. No. 101-485(II), at 455 (1990) (reprinted in 1990 U.S.C.C.A.N. 445, 455) (stating "[t]he exception set out in Title VII for elected officials . . . is not incorporated in

---

[1]The definition of "employee" under the Age Discrimination in Employment Act, like the corresponding Title VII definition, does not include elected officials. *See* 29 U.S.C. § 630(f); 42 U.S.C. § 2000e(f). Thus, Hove is limited to bringing her age discrimination claim under the equal protection clause, by way of 42 U.S.C. § 1983.

the ADA").) Accordingly, the County's contention that elected public officials are expressly excluded under the ADA is incorrect.

On the flip side, I am not persuaded, as Hove contends, that the absence of a specific exemption for public officials automatically means that Hove *is* an employee. As the County points out in its second (and stronger) argument, the Supreme Court has held that when Congress "has used the term 'employee' without defining it . . . Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 444–45 (2003) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23 (1992)). Under this doctrine, the court examines a number of factors to determine whether an employment relationship exists, foremost of which is "the hiring party's right to control the manner and means by which the product is accomplished." *Darden*, 503 U.S. at 323; *see also Hojnacki v. Klein-Acosta*, 285 F.3d 544, 551 (7th Cir. 2002) (for employer-employee relationship to exist, employer must have "the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved[.]"); *Parker*, 2006 WL 2644899, at *2 (applying common law test to determine whether five members of water district's Board of Directors, who were elected or appointed to their positions, were subject to the district's control so as to be counted towards statutory minimum of 15 employees); Restatement (Second) of Agency § 220 (1958) (defining servant as "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.").

Given Hove's status as an elected official who can only be fired by the governor and whose duties are spelled out by state statute, I am extraordinarily skeptical that Hove is an employee of the County under common law agency principles, assuming that such principles even apply. *See, e.g., Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 291 (7th Cir. 2016) (declining to apply common law multifactor test to determine whether student athletes were employees under the FLSA because the test failed to "capture the true nature of the relationship" between student athletes and their schools); *Vanskike v. Peters*, 974 F.2d 806, 809-12 (7th Cir. 1992) (holding that it did not make sense to apply multifactor common law agency test to decide whether a prisoner was a covered "employee" under the FLSA because work performed by the prisoner did "not stem from any remunerative relationship or bargained-for exchange of labor for consideration").

But defendants haven't cited any case that says an elected sheriff (or other officer) can *never* be an employee, no matter the circumstances. Instead, they say Hove's ADA claim must be dismissed because her amended complaint does not "allege any of the factors" that would show she has an employment relationship with the County under *Clackamas*. But as Hove points out, she is not required to proffer evidence or even allege facts supporting all the elements of her claim at the complaint stage. Multi-factor common law tests like that described in *Clackamas* are inherently fact-dependent and thus improperly decided on a 12(b)(6) motion. Further, as Hove notes, the County admits that it supervises the sheriff's office, approves her budget, makes staffing decisions and sets her salary. Although none of these facts shows that the County controls Hove as an *individual*, they suggest that it is at least *plausible* that she could be an employee. Absent controlling authority (or even a fully-developed argument) from defendants

11

adequately establishing that Hove isn't an employee, this issue will have to wait until summary judgment.

I agree with defendants that Hove's present contention that she is a County employee cannot logically be reconciled with her strident "cease and desist" letter, attached to her complaint, in which she asserted the sovereignty and independence of the sheriff's office and explicitly *denied* that she worked for the County Board. Hove now wants to eat her cake and have it too. But Hove's April 9, 2021 letter was unsworn, and, by all appearances, uncounseled, and she attaches it for the purpose of her retaliation claim, so she probably hasn't pleaded herself out of court, s*ee Guzell v. Hiller*, 223 F.3d 518, 519 (7th Cir. 2000) (whether assertions in exhibit should be deemed as incorporated into complaint depends on purpose for which plaintiff attached the exhibit). More salient to today's analysis, defendants haven't made any effort to tie off the loose ends here: they simply quote from the letter without arguing how or why it matters to the analysis. A court is not obliged to make arguments for a party that the party has not made for itself. *Kiebala v. Boris*, 928 F.3d 680, 685 (7th Cir. 2019), quoting *Doherty v. City of Chicago*, 75 F.3d 318, 323 n.2 (7th Cir. 1996). Accordingly, although Hove's letter could be viewed as completely undermining her claim, defendants have not established that it compels dismissal.


### C. Adverse Action

A plaintiff bringing a claim of employment discrimination must allege that she suffered an adverse employment action. 42 U.S.C. § 12112; *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013) (adverse employment action an element of disability discrimination

under the ADA).  "[A]lthough the definition of an adverse employment action is generous, an employee must show some quantitative or qualitative change in the terms or conditions of his employment or some sort of real harm." *See Chaib v. Indiana*, 744 F.3d 974, 982 (7th Cir. 2014) (quoting *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1116 (7th Cir. 2009)). "A materially adverse change might be indicated by a termination in employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993).

Defendants acknowledge that Hove's amended complaint fairly alleges the following adverse actions by the Board: (1) removing the emergency management director position and emergency dispatch and supervision responsibilities from her department; (2) contacting her staff and directing their activities without her permission; (3) refusing to approve her proposed budget; and (4) denying her proposed job descriptions for lieutenants.  In her response brief, Hove clarifies that she is asserting two claims:  (1) a stand-alone claim based on the removal of the emergency dispatch supervision responsibilities, which she characterizes as a "de facto" demotion; and (2) an "unbearable changes in job conditions"/hostile environment claim based on the other three actions.  Dkt. 23, at 9, 22. The first claim is actionable; the second is not.

As an initial matter, I set to one side defendants' contention that anything the Board did as a legislative body could not have been "materially adverse" as a matter of law because the County Board was exercising its "statutory legislative authority" when it acted.  Dkt. 19, at 20-21.  This argument (which defendants repeatedly reassert) makes little sense.  The focus of the adverse employment action inquiry is on the harm to the plaintiff, not on the motives of the

defendant.  That a public legislative body may have been acting "within its authority" does not mean it has *carte blanche* to take actions that violate rights guaranteed by federal law.  I surmise that defendants may be appealing to the doctrine of legislative immunity, but that is an affirmative defense to Hove's § 1983 claim, and in any case, it is only available to Holst and Aubart, not the County.  *Benedix v. Vill. of Hanover Park, Ill.*, 677 F.3d 317, 318–19 (7th Cir. 2012) ("Municipalities do not enjoy any kind of immunity from suits for damages under § 1983.").

Turning then, to Hove's specific claims, her allegations concerning defendants' removal of the dispatch personnel from her supervision are sufficient to support a finding that she was subject to an adverse job action–but just barely.  "[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities," *Crady v. Liberty Nat. Bank & Tr. Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993), and there is precious little in Hove's amended complaint to suggest that the reorganization of the dispatch personnel was anything more than that.  Nevertheless, the rules as to what constitutes a material adverse action are "not hard and fast" but rather depend on the plaintiff's "unique circumstances."  *Porter v. City of Chicago*, 700 F.3d 944, 955 (7th Cir. 2012). In spite of the dearth of details in the amended complaint, it is at least plausible that Hove could present additional facts to show that under the unique circumstances of her employment with Pierce County–assuming that Hove first establishes that she even *is* an employee–the removal of the dispatch supervision responsibilities was a materially adverse employment action.  And the County has failed to offer any legally-sound reasons for me to conclude otherwise.  So I will not grant defendants' motion for dismissal with respect to this claim.

14

As for the remaining actions, Hove appears to concede that none is sufficiently adverse on its own to support a discrimination claim, but she says they combined to make her job "unbearable." I will analyze this claim under a hostile environment framework because Hove seems to use the terms interchangeably; moreover, an employee's work environment need not be "hellish" or "unbearable" to be actionable. *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017). (I will also consider the claim from the standpoint of both disability and age harassment, because Hove asserts a hostile environment claim based on age under 42 U.S.C. § 1983. The analysis and the outcome are the same whether age or disability was the alleged reason for the harassment.)

Like Title VII, the ADA prohibits a hostile work environment in which "a series of separate acts . . . collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (citing 42 U.S.C. § 2000e-5(e)(1)); *Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 856 (7th Cir. 2019) (hostile work environment claims are cognizable under the ADA). As opposed to "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire," a hostile work environment claim addresses acts "different in kind" whose "very nature involves repeated conduct," such as "'discriminatory intimidation, ridicule, and insult.'" *Id*. at 114 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To state a hostile work environment claim, a plaintiff must allege facts from which it can plausibly be inferred that

> (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability.
>
> *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016).

Determining whether an environment is "hostile" or "abusive" is determined by considering all of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23.

Even when viewed under the liberal pleading standards that apply to discrimination claims, Hove fails to allege a hostile work environment. Hove's allegations are centered on Aubart and Holst, whom Hove says "pressured her to retire" at the March 23, 2021, meeting by remarking that she was "old" and not able to "handle things," then went behind her back and had discussions with her staff. Even when viewed in the aggregate, these alleged acts do not rise to the level of an actionable claim of hostile work environment. First, as Hove appears to acknowledge, "[o]ffhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment." *Passananti v. Cook Cty.*, 689 F.3d 655, 667 (7th Cir. 2012). Therefore, Aubart's allusion to Hove's age or disability when he suggested that she "step down and just let Chief Deputy Steve Albarado handle things," and Holst's statement that Hove was "getting old" and "should retire," while demeaning, were neither objectively severe nor pervasive enough to constitute actionable harassment.

Hove also points to Holst and Aubart's action of contacting her staff and "provid[ing] them directions as if Plaintiff had not returned to work." According to Hove, this interfered with the sheriff's office chain of command, internal operations, and administration. Dkt. 16, at ¶ 27. But neither in her amended complaint nor her brief does Hove offer details about when, with whom, about what, or how often the contacts occurred. (In her cease-and-desist letter,

16

Hove accused Holst and Aubart of meeting with her staff, behind her back, to discuss Hove's "operations and management decisions." Dkt. 16-4.) Hove's flimsy allegations do not support an inference that these contacts occurred repeatedly or that Holst and Aubart met with Hove's staff for the purpose of disability (or age) harassment.

Further, it is difficult to see how these contacts could be meant as a form of ridicule or intimidation if they were done outside Hove's presence and without her knowledge. Hove points to her April 9, 2021 cease-and-desist letter as evidence that this conduct by "defendants" (she doesn't say who) was "objectively intimidating, hostile, and offensive," dkt. 19, at 21. I disagree. Hove's letter demonstrates simply that Hove *subjectively* perceived the contacts with her staff to be offensive, not that the contacts were *objectively* severe or pervasive. In fact, this letter undermines Hove's claim: although Hove invoked the phrase "hostile environment," the gist of her complaint was that Holst and Aubart were stepping out of bounds and interfering with her statutory duties as sheriff. Hove did *not* complain that they were harassing her because of her age or disability and she did *not* mention their comments from the March 23 meeting.

Finally, Hove attempts to clear the "severe and pervasive" hurdle (and perhaps avoid the notice problem) by looping in the Board's failure to approve her proposed budget and some of her proposed job descriptions. This attempt fails. First, Hove never says *when* the Board took these actions or even whether Holst and Aubart were still on the Board at that point, so there is no basis to infer that these actions were part of the same "unlawful employment practice" as the other alleged conduct.

Second, as defendants point out, Hove doesn't allege that the Board did not approve *any* budget or *any* job description; all she alleges in her complaint is that the Board didn't give her

17

exactly what she asked for.  Hove asserts only that these actions "impeded" her from performing her job.  Such an abstract recitation of the elements of a cause of action cannot help Hove's complaint survive a Rule 12(b)(6) motion.  Finally, the only connection that Hove draws between these decisions and her age or disability is that they occurred sometime after the March 23, 2021 meeting when Hove and Aubart brought up her age.  This is not enough to support a plausible inference that the Board took these actions because of Hove's age or disability.

Although Hove is not required to say much at the pleading stage, she must say enough to present a story that holds together.  Stripped of its literary embellishments, Hove's story fails, as a matter of law, to tell a tale of a hostile work environment either perpetrated by or tolerated by Pierce County.  Accordingly, this aspect of her discrimination claim will be dismissed.


### D.  Qualified Individual With A Disability

To bring a claim under the ADA, a plaintiff must allege that she is a "a qualified individual with a disability."  As used in the ADA, the term "disability" means either:  (A) a physical or mental impairment that substantially limits one or more of the individual's major life activities; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1).  An individual is "being regarded as having such an impairment" if the individual establishes that "she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." § 12102(3)(A).  Hove claims that she suffers from an actual impairment and that defendants regarded her has having a disability under 42 U.S.C. § 12102(1)(A) and (C).

18

Hove's allegations concerning her disability consist of the following:

> 14.  On or about September 9, 2020, Plaintiff was diagnosed with brain cancer and had surgery for it.
>
> 16.  Plaintiff's brain cancer substantially limited her ability to perform certain major life activities for a period of time.
>
> 17.  Plaintiff spent some time out of the office for a few months following the surgery while still fulfilling all of her obligations as Sheriff as she had been prior to the surgery.
>
> 18.  In March of 2021, Plaintiff returned to work at her office.
>
> 19.  Despite returning to work, Plaintiff's brain cancer continues to substantially limit her ability to perform certain major life activities.

In support of their dismissal motion, defendants acknowledge that Hove's alleged condition is brain cancer. But they say her complaint must be dismissed because Hove has failed to allege: (1) whether her condition is a physical or mental impairment; (2) what major life activities are limited; or (3) how her condition limits those activities. They also note that paragraphs 16 and 19 are contradictory: paragraph 16 seems to suggest that Hove was only temporarily impaired, but paragraph 19 suggests she has a permanent impairment.

I agree that Hove's vague and contradictory allegations are insufficient to allege an actual disability under 42 U.S.C. § 12102(1)(A). *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015) (plaintiff bringing ADA claim on basis of actual disability must allege a specific disability). But Hove alleges in the alternative that defendants took discriminatory actions against her because they "perceived" her to have a disability. Under the "regarded as" prong, Hove need not show that her impairment "limits or is perceived to limit a major life activity;" she only need show that defendants regarded her as having a physical or mental impairment.

19

42 U.S.C. § 12102(3)(A)("An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."); *Richardson v. Chicago Transit Auth.*, 926 F.3d 881, 886 (7th Cir. 2019).

Although Hove has not specifically alleged that anyone on the County Board was aware of her brain cancer, given her sixth-month absence from her office and Holst's and Aubart's suggestion upon her return that she step down and allow the deputy sheriff to "handle things," it is reasonable at this stage to infer that the Board was aware of her medical condition and that at least Holst and Aubart may have regarded her as having a disability.

But Hove's putative "employer" was the County, not Aubart and Holst.  Hove does not allege that Holst and Aubart were her supervisors, *see Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013) (employee is a "supervisor" for purposes of vicarious liability under Title VII if he is "empowered by the employer to take tangible employment actions against the victim"), nor that they were they final decision-makers.  As the County points out, under state law, a county can act only by a majority vote of its board. Wis. Stat. § 59.02(1), (2).  So for Hove's claim to succeed, she cannot simply rely on Holst and Aubart's biased comments to show the Board's discriminatory motive; she must have a plausible theory to show that the Board's unanimous vote to reorganize the dispatch employees was "because" Holst and Aubart perceived her as disabled.  *Perez v. Thorntons, Inc.*, 731 F.3d 699, 709 (7th Cir. 2013) ("Standing alone, biased comments do not establish discriminatory motive unless they were by the decision maker and can be connected to the decision.").  At the very least, Hove must be able to adduce evidence

that Holst and Aubart held influence over the other Board members.  *Brewer v. Board of Trustees of University of Ill.*, 479 F.3d 908 (7th Cir. 2007) (discriminatory intent of nondecision maker with "singular" or "significant" influence may be imputed to decision maker).

Defendants note that Hove has not specifically alleged that Holst or Aubart influenced the rest of the Board members to remove the emergency dispatch responsibilities from her supervision.  Even so, when viewed as a whole, the amended complaint fairly alleges that Holst and Aubart instigated the change and were instrumental in the ordinance's passage. Given their positions as chairman and vice chairman of the Board, respectively, it is at least plausible that Hove will be able to show that they held enough influence over the rest of the Board so as to have been the functional decision-makers with respect to the ordinance change.

In sum, Hove has plausibly alleged that she was discriminated against because she was regarded as having a disability.  Accordingly, defendants' motion to dismiss her ADA claim will be denied.

## II.  Retaliation under the ADA

Count V of the Amended Complaint asserts a claim of retaliation under the ADA. Under the statute, it is unlawful for a person to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter  . . .[.]"  42 U.S.C. § 12203.  In other words, the ADA protects an employee from "retaliation for complaining about the types of discrimination it prohibits." *Miller v. Am. Family Mutual Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000) (describing same language in Title VII). To state a claim for retaliation, a plaintiff must allege that: (1) she engaged in statutorily protected activity; (2) she

suffered an adverse action; and (3) there was a causal link between the two.  *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1106 (7th Cir. 2012).

The alleged "protected activity" in which Hove engaged was her "cease and desist" letter of April 9, 2021. Defendants argue that Hove's retaliation claim must be dismissed because it is not clear from the complaint what adverse action she suffered after she wrote the letter, or why she believes those actions are causally related to her complaint.  I agree.  Hove alleges generally that after her April 9 letter, defendants "impede[d]" her from performing her duties as sheriff, but it is unclear who impeded her, or how.  It appears that Hove is referring to the Board's refusal to approve her proposed budget or her job descriptions for a lieutenant, but the timing of those events are unclear.  Further, as noted above, those actions were not materially adverse.

What is more, Hove's retaliation claim fails for a more basic reason:  she did not engage in statutorily protected activity.  As noted above, in her April 9, 2021 letter, Hove complained that Holst, Aubart and Matthys were creating a "hostile environment" by contacting her staff and directing their activities without her permission.  But nowhere in the letter did Hove say that these individuals or the Board as a whole were taking these actions *because of her disability*, which is what the ADA requires.  *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 727–28 (7th Cir. 2003). Hove didn't need to use any magic words such as "disability," but she needed to say *something* to convey that disability discrimination "was her real problem." *Id*.  "An employee can honestly believe she is the object of discrimination, but if she never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints." *Miller*, 203 F.3d at 1008.  Hove's letter didn't mention her brain cancer, her medical leave, or anything else to reasonably suggest that she was complaining about disability

discrimination.  Accordingly, because it is plain from Hove's complaint that she did not engage in protected activity under the ADA, her retaliation claim must be dismissed.

### III.  § 1983 Claims

In Counts III and IV, Hove purports to assert claims under 42 U.S.C. § 1983.  In Count III, Hove purports to assert a claim against both the individual defendants and the County for maintaining a hostile work environment based on age and disability.  In Count IV, she alleges a "discrimination" claim, asserting that "the unwelcome, abusive, offensive and harassing discriminatory conduct Plaintiff had to endure deprived her of conditions and privileges of her employment." Dkt. 16, ¶ 59.  Hove frames her claims as alleging violations of the Fourteenth Amendment's equal protection clause.[2]  Dkt. 23, at 24.  Just how these two counts differ from each other is not clear, but from the headings, I presume that Count III parallels Hove's "hostile environment claim" and Count IV parallels her discrimination claim based on the Board's decision to remove the dispatch personnel and responsibilities from Hove's supervision.  The elements of Hove's discrimination claims under the ADA and the Equal Protection Clause are the same. *See Silva v. Wisc.*, 917 F.3d 546, 559 (7th Cir. 2019) ("We evaluate discrimination claims brought under both Title VII and § 1983 using the same standard.").

---

[2] Unlike the defendants, I do not understand Hove to be alleging a class-of-one equal protection claim, even though her complaint hints at one. Hove has not defended a class-of-one theory in her response brief. Regardless, I agree with defendants that any such claim would be barred under *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 605 (2008) (class-of-one theory of equal protection does not apply in the public employment context).

Hove cannot proceed on her § 1983 hostile environment claim for the reasons stated above: her allegations fall short of plausibly alleging that she was subject to severe or pervasive harassment based on her age or disability.    As for Count IV, the discrimination claim, I will dismiss the claims against Holst and Aubart, whom Hove sues in both their official and personal capacities.   The official capacity claims can be dismissed because they are redundant of Hove's claim against the County.   *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law . . . . Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (internal citations omitted); *Brandon v. Holt*, 469 U.S. 464, 472 (1985).   Because Pierce County is itself a defendant, the official capacity claims against Holst and Aubart are superfluous.   *Smith v. Metropolitan School Dist. Perry Township*, 128 F.3d 1014, 1021 n. 3 (7th Cir. 1997) ("Because Smith's suit is also against the entity, i.e., the School District and School Board, her claims against the principal and assistant principal, in their official capacities, are redundant.").

The individual capacity claims are dismissed on grounds of legislative immunity.   There is no dispute that the Board's reorganization of the dispatch personnel culminated in the passage of an ordinance amending the Pierce County code.   "[A]n ordinance adopted through the legislative process, and having the force of law, is covered by legislative immunity no matter the motives of those who proposed, voted for, or otherwise supported the proposal."   *Benedix*, 677 F.3d at 318 (citations omitted).   Hove has not pointed to any contrary authority or otherwise responded to Holst and Aubart's invocations of legislative immunity in her response to the motion.   Accordingly, the § 1983 claims against the individual defendants will be dismissed.

24

As noted previously, however, legislative immunity does not protect the County. "Section 1983 imposes liability on state and municipal governments for their own unconstitutional policies . . . , and legislation makes the [challenged action] the [government's] policy." *Id*. But as with the discrimination claim under the ADA, Hove must do more than simply rely on Aubart's and Holst's alleged discriminatory motives in order to establish municipal liability on the County. *Harris Cty. Bail Bond Bd.*, 139 F.3d 513, 521 (5th Cir. 1998) ("When the municipality's policymaker is a multimember board, "the separate actions of individual members of the Board are not sufficient to bind the Board as an entity."). Hove must have some basis to show that the *Board* acted with an impermissible motive. In *Haka v. Lincoln County*, 533 F. Supp. 2d 895 (W.D. Wis. 2008), the court held that it was not necessary for the plaintiff to show that a majority of the Board members had unconstitutional motives but that she could meet her burden by showing "the unlawful motive of an individual with significant influence over the decision making body." *Id*. at 914–15. *But see Northwestern Univ. v. City of Evanston*, No. 00 C 7309, 2002 WL 31027981, at *8 (N.D. Ill. Sept. 11, 2002) ("To establish municipal liability based on the discriminatory motive of a multi-member body, the plaintiff must show that a majority of its members acted with discriminatory intent."). As discussed above, Hove's amended complaint plausibly suggests that Holst and Aubart had unconstitutional motives and that they were in a position to influence the other Board members. So she may proceed on her § 1983 discrimination claim against the County.

25

**IV.  State Law Claim**

Hove brings a claim for age and disability discrimination against defendants under the Wisconsin Fair Employment Act (WFEA), Wis. Stat. § 111.321. Defendants offer various argument in favor of dismissal, but they miss the simplest one:  "The WFEA does not afford plaintiff a general private right of action, unless plaintiff brings a claim for discrimination occurring between July 1, 2009, and April 19, 2012."  *Sharp v. Stoughton Trailers, LLC*, No. 15-CV-598-JDP, 2016 WL 3102241, at *3 (W.D. Wis. June 2, 2016).   The alleged discrimination in this case occurred in 2021, so Hove cannot bring a WFEA claim.


**V. Punitive Damages**

Finally, because I am dismissing the claims against the individual defendants, I am granting defendants' request to dismiss Hove's complaint for punitive damages.  Hove does not dispute that punitive damages are not recoverable from a municipality under *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).

ORDER

IT IS ORDERED that:

1. The motion by defendants to dismiss the amended complaint, dkt. 18, is DENIED IN PART and GRANTED IN PART.  Defendants' motion is DENIED with respect to plaintiff's claims against Pierce County for discrimination under the Americans with Disabilities Act and the equal protection clause based on the removal of emergency dispatch and supervision responsibilities from her department.  The motion is GRANTED as to all remaining claims and defendants.

2. Defendants Pierce County Board of Supervisors, John Aubart and Jeff Holst are DISMISSED.

3. Plaintiff's claim for punitive damages is DISMISSED.

Entered this 20th day of March, 2023.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge